UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA          CRIMINAL DOCKET NO.: 92-469

VERSUS                            SECTION:  I

GLENN METZ

MEMORANDUM IN SUPPORT OF
MOTION FOR COMPASSIONATE RELEASE

As things stand today, Glenn Metz was sentenced to life in prison for a continuing criminal enterprise (CCE), money laundering, and possession of cocaine with intent to distribute.  These are, by their terms and elements, non-violent offenses.  Mr. Metz has therefore received a life without parole sentence for crimes that did not involve loss of life or serious bodily injury.  This alone is extraordinary, and given what follows, presents a compelling case for compassionate release, whether under the First Step Act or DOJ's updated April 13, 2021 guidance on the CARES Act, and whether by reduction of sentence or release to home confinement.  18 U.S.C. § 3582(c)(1)(A) (First Step Act); Andre Matevousian et al., *Memorandum for Chief Executive Officers:  Home Confinement* Bureau of Prisons (April 13, 2021), *available at* https://www.fd.org/sites/default/files/news/2021.4.13_-_bop_home_confinement_cares_ memo.pdf.

Many people would be crushed under the weight of a life sentence.  Mr. Metz has instead maintained an almost-perfect disciplinary record during his nearly three decades in prison—he has a single write-up, to do with use of the prison phone system, from 2003—and has consistently sought to better himself through education.  He has grown old and ill, with three pages worth of medical problems and over a page worth of medications.  He is over 65 and so thin—a body mass index of less than 19—that it's a medical problem.  He has suffered through COVID-19 while

incarcerated. In short, the circumstances present are "extraordinary and compelling" and justify reducing Mr. Metz's sentence or releasing him to home confinement. At some point, enough must be enough, else punishment becomes pitiless, pointless vengeance.

## I. Procedural history

In 1993, Mr. Metz was convicted after a jury trial of conspiracy to possess cocaine with intent to distribute, conducting a continuing criminal enterprise ("CCE"), money laundering, possession with intent to distribute cocaine, and carrying and using a firearm in aid of racketeering. On appeal, the United States Court of Appeals for the Fifth Circuit largely affirmed, albeit over a number of serious errors, but did vacate the conspiracy charge for a double jeopardy violation because of the conviction and life sentence Mr. Metz received for the CCE violation. *United States v. Tolliver*, 61 F.3d 1189 (5th Cir. 1995). The Fifth Circuit later vacated Metz's firearms conviction in light of the United States Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137 (1995), although the decision had no impact on the life sentence Metz received for his CCE conviction. *United States v. Tolliver*, 116 F.3d 120, 126 (5th Cir. 1997).

In 1998, Mr. Metz filed his first motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Mr. Metz argued that his life sentence should be vacated due to ineffective assistance of counsel, insufficiency of evidence, improper jury instructions with respect to the CCE charge, imposition of a sentence in excess of the statutory maximum, and the improper admission of 404(b) evidence. The Court denied his Section 2255 motion later that same year and the Fifth Circuit denied a certificate of appealability on March 20, 2000.

Mr. Metz has since filed several unsuccessful post-conviction challenges to his conviction and sentence, including five successive Section 2255 motions, a Section 2241 motion, a motion for reduction of sentence, and an earlier motion for compassionate release. It is that last filing that

is most relevant here, as the Court dismissed it without prejudice. R. Doc. 1244, p. 5. The Court noted that Mr. Metz did not evidence his satisfaction of the applicable exhaustion requirement and failed to provide medical records to support his claims. *Id.* p. 2. This filing corrects both those deficiencies and follows several favorable legal developments in the past months, both at the national level and in the Fifth Circuit.

## II. Exhaustion

Under 18 U.S.C. § 3582(c)(1)(A), an inmate may file a motion with the Court following an adverse determination of an inmate's request that the BOP file a motion to modify the inmate's sentence, or 30 days from BOP's receipt of a request that it file such a motion. Mr. Metz filed for compassionate release under the First Step Act and/or the CARES Act on February 20, 2021. He followed up with the Warden on March 22, 2021, after not having received a response and was assured one would be forthcoming. Since then, he has received no further response. Because more than 30 days have elapsed since his filing, Mr. Metz has satisfied the exhaustion requirement.

## III. Statutory and Guidelines Criteria for First Step Act Compassionate Release

### A. The history of the criteria should guide the Court's implementation

Congress first enacted the modern form of the compassionate release statute contained in 18 U.S.C. § 3582 as part of the Comprehensive Crime Control Act of 1984. Section 3582(c) allows a district court to modify even a final "term of imprisonment" in four situations, the broadest of which is directly relevant here: A sentencing court can reduce a sentence if and whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). At the time of its enactment, Congress conditioned the reduction of sentences on the BOP Director filing an initial motion in the sentencing court; absent such a motion, sentencing courts had no authority to modify a prisoner's sentence for extraordinary and compelling reasons.

Congress never defined what constitutes an "extraordinary and compelling reason" for resentencing under § 3582(c). But the legislative history gives an indication of how Congress thought the statute should be employed by federal courts. One of Congress's initial goals in passing the Comprehensive Crime Control Act was to abolish federal parole and create a "completely restructured guidelines sentencing system." S. Rep No. 98-225, at 52, 53 n.74 (1983). Yet, recognizing that parole historically played a key role in responding to changed circumstances, the Senate Committee stressed how some individual cases may still warrant a second look at resentencing:

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which other *extraordinary and compelling circumstances justify a reduction of an unusually long sentence*, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment.

*Id.* at 55–56 (emphasis added). Rather than having the Parole Commission review every federal sentence focused only on an offender's rehabilitation, Congress decided that § 3582(c) could and would enable courts to decide, in individual cases, if "there is a justification for reducing a term of imprisonment." *Id.* at 56.

Congress intended for the situations listed in § 3582(c) to act as "safety valves for modification of sentences," *id.* at 121, that enabled sentence reductions when justified by various factors that previously could have been addressed through the (now abolished) parole system. This particular safety valve would "assure the availability of specific review and reduction to a term of imprisonment for 'extraordinary and compelling reasons' and [would allow courts] to respond to changes in the guidelines." *Id.*

Noting that this approach would keep "the sentencing power in the judiciary where it

4

belongs," rather than with a federal parole board, the statute permitted "later review of sentences in particularly *compelling* situations." *Id.* (emphasis added). Congress thus intended to give federal sentencing courts an equitable power that would be employed on an individualized basis to correct fundamentally unfair sentences. And there is no indication that Congress limited the safety valve of § 3582(c)(1)(A) to medical or elderly release; if extraordinary and compelling circumstances were present, they could be used to "justify a reduction of an unusually long sentence." S. Rep No. 98-225, at 55–56.

Things did not quite work out that way. Leaving the BOP Director with ultimate authority for triggering and setting the criteria for sentence reductions under § 3582(c)(1)(A) created several problems. The Office of the Inspector General found that the BOP failed to provide adequate guidance to staff on the criteria for compassionate release, to set timelines for reviewing compassionate release requests, to create formal procedures for informing prisoners about compassionate release, and to generate a system for tracking compassionate release requests. U.S. Dep't of Justice Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* i-iv (Apr. 2013). As a result of these problems, the OIG concluded that "BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered." *Id.*; *see generally* Stephen R. Sady & Lynn Deffebach, *Second Look Resentencing Under 18 U.S.C. § 3582(c) as an Example of Bureau of Prisons Policies That Result in Overincarceration*, 21 FED. SENT. RPTR. 167 (Feb. 2009).

**B. The new procedure and governing standard**

Congress heard those complaints. In late 2018, Congress passed the First Step Act, part of which transformed the process for compassionate release under § 3582(c)(1)(A). See P.L. 115-391, 132 Stat. 5194, at § 603 (Dec. 21, 2018). Section 603 of the First Step Act changed the

5

process by which § 3582(c)(1)(A) compassionate release occurs: instead of depending upon the BOP Director to determine an extraordinary circumstance and then move for release, a court can now resentence "upon motion of the defendant," if the defendant has fully exhausted all administrative remedies, "or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Once the defendant who has properly exhausted files a motion, a court may, after considering the 18 U.S.C. § 3553(a) factors, resentence a defendant, if the court finds that extraordinary and compelling reasons warrant a reduction. *Id.*

> The Guidelines have interpreted this provision to allow courts to
>
> reduce a term of imprisonment (and [they] may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determinations that –
>
> (1) (A) extraordinary and compelling reasons warrant the reduction; or [an inapplicable provision] . . . .
> (2) the defendant is not a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g); and
> (3) the reduction is consistent with this policy statement.

USSG § 1B1.13.

Importantly, this policy statement does not limit the discretion of the Court to find extraordinary and compelling circumstances. Writing for a unanimous Fifth Circuit panel, Judge Oldham held: "[W]e conclude that neither the policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582. The district court on remand is bound only by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a). In reaching this conclusion, we align with every circuit court to have addressed the issue." *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021) (citing *United States v. McGee*, 992 F.3d 1035, 1050–

51 (10th Cir. Mar. 29, 2021); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)). Subsequently, the Fifth Circuit has reversed district courts that erroneously limit their consideration to factors identified in the Guidelines and accompanying policy statements. *United States v. Cooper*, 996 F.3d 283, 284 (5th Cir. 2021).

**IV. Mr. Metz has demonstrated extraordinary and compelling circumstances**

The Guidelines nevertheless present a useful starting point for the analysis. Mr. Metz will focus on three of the circumstances they discuss. First, he "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years of his prison sentence." USSG § 1B1.13, App. Note 1(B). Under the plain terms of these factors as considered by the Sentencing Commission, Mr. Metz should be released. The attached medical records dated February 17, 2021, from the Bureau of Prisons show that Mr. Metz is over 65 and suffers from, among other things: prostate disease, heart disease, cardiac arrhythmias, high blood pressure, high cholesterol, and is seriously underweight. Ex. A, p. 1 (filed under seal). He takes eight different medications regularly. Ex. B, pp. 1-2 (filed under seal). He has had COVID. Ex. A, p. 3. He has served nearly 30 years of his sentence. This is a clear-cut case.

Second, Mr. Metz is also "suffering from a serious physical or medical condition" and "experiencing deteriorating physical or mental health because of the aging process," both of which "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility" during the coronavirus crisis, and these underlying conditions are not ones "from which he . . . is [] expected to recover." USSG § 1B1.13 n.1(A)(ii)-(iii). The fact Mr.

7

Metz has already had COVID does not undermine his claim to compassionate release based at least in part on the pandemic. *E.g.*, *United States v. Bozon Pappa*, No. 1:95-CR-0084-JAL, 2021 WL 1439714 (S.D. Fla. Apr. 1, 2021) (granting where inmate had already had first dose of vaccine); *United States v. Hatcher*, No. 18-CR-454-10 (KPF), 2021 WL 1535310, at *3 (S.D.N.Y. Apr. 19, 2021) (granting relief to fully vaccinated inmate).[1] Courts have focused on the extraordinarily harsh consequences of lock-downs and the risk of variants, among other factors, in refusing to count the pandemic over for purposes of compassionate release.

Finally, the presence of Mr. Metz's underlying conditions during the coronavirus crisis, combined with the non-violent nature of his offense and his demonstrated rehabilitation, constitute "extraordinary and compelling reason[s] other than, [and] in combination with, the reasons described" above. *Id.* § 1B1.13 n.1(D). Mr. Metz has maintained an exemplary disciplinary record. Ex. C. He has completed some 25 self-improvement courses over and above obtaining his GED. Ex. D. He has a family that is willing and able to support him and assist with his return home. Ex. E. He is still in prison as a function of the war-on-drugs-era sentencing provisions that have in many respects been reconsidered—and which the First Step Act was designed to permit further reconsideration concerning. U.S. Sentencing Comm'n, *The First Step Act of 2018: One year of Implementation* (Aug. 31, 2020) ("In First Step Act Year One, of 13,138 drug trafficking

---

[1] *See also United States v. Manglona*, 3:14-CR-05393-RJB, 2021 WL 808386 (W.D. Wash. Mar. 3, 2021); United States v. Sandoval, 2021 WL 673566 (W.D. Wash. Feb. 22, 2021); *United States v. Ricks*, No. 1:17-CR-00134-JMS-TAB, 2021 WL 1575950 (S.D. Ind. Apr. 22, 2021); *United States v. Spriggs*, No. CCB-10-364, 2021 WL 1856667 (D. Md. May 10, 2021*): United States v. Summerfield*, No. 2:06-CR-00428-KJM, 2021 WL 1517923 (E.D. Cal. Apr. 16, 2021); *United States v. White*, No. 3:17-CR-00104-2, 2021 WL 268719, at *4 (M.D. Tenn. Jan. 27, 2021); *United States v. Topete*, 05-cr-257, ECF 866, -- F. Supp. 3d, 2021 WL 842547 (N.D. Ala. Mar. 5, 2021); *United States v. Hodge*, 17-cr-51, ECF 367; 2021 WL 1169896 (E.D. Ky. Mar. 26, 2021); *United States v Sweet*, 07-20369, 2021 WL 1430836 (E.D. Mich. Apr. 15, 2021); *United States v. Lonich*, 2021 WL 1668062 (N.D. Cal. Apr. 28, 2021).

offenders convicted of an offense carrying a mandatory minimum penalty, 41.8 percent (n=5,493) received statutory safety valve relief from the mandatory minimum penalty. By comparison, in fiscal year 2018, of 10,716 drug trafficking offenders convicted of an offense carrying a mandatory minimum penalty, 35.7 percent (n=3,820) received statutory safety valve relief.").

The Section 3553(a) factors, as well as the absence of any danger he poses to others, further support Mr. Metz's release. He has been a model inmate. This demonstrates respect for the law and the lengthy sentence he has already served—nearly three decades—reflects the seriousness of the offense. As his disciplinary history demonstrates, he has been deterred from criminal conduct and the public will be safe. His extensive educational history shows that he has obtained the vocational training and correctional treatment indicated. There simply is no reason for the taxpayers to keep paying for a sick, old man—with a BMI of *19*—as he continues to deteriorate in prison.

Should the Court disagree with any of the above, it may still move Mr. Metz to home confinement under the CARES Act. The increased control public health officials have been able to exert over the pandemic has not undermined this tool, and indeed BOP elected to *liberalize* its use little more than a month ago. Andre Matevousian et al., *Memorandum for Chief Executive Officers: Home Confinement* Bureau of Prisons (April 13, 2021), *available at* https://www.fd.org/sites/default/files/news/2021.4.13_-_bop_home_confinement_cares_memo.pdf. There is no reason the Court should not take its lead from BOP, which is in the best position to evaluate the continuing effect of the pandemic on its operations, and Mr. Metz is an ideal candidate for removal from public support.

### V. Conclusion

Mr. Metz merits home confinement no less, and perhaps more, than others in the news who

have received this life-saving accommodation during these extraordinary and compelling times. Thirty years of one's adult life is a lifetime. Mr. Metz has paid his due, and now his continued confinement is only forcing taxpayers to pay for his upkeep. It is time to let him come home.

Respectfully submitted,

*/s/ Sara A. Johnson*
Sara A. Johnson (La. Bar No. 31207)
700 Camp Street
New Orleans, LA 70130
(504) 528-9500
sara@sarajohnsonlaw.com

## CERTIFICATE OF SERVICE

This certifies that I filed the foregoing using the CM/ECF system, which will send a copy to all counsel of record.

Dated: June 6, 2021.

*/s/ Sara A. Johnson*
Sara A. Johnson