# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL DOCKET NO.: 92-469 |
| VERSUS | SECTION: I |
| GLENN METZ | |

## REPLY MEMORANDUM IN SUPPORT OF
## MOTION FOR COMPASSIONATE RELEASE

Glenn Metz has served 30 years of a life sentence. He is an old man, and an ill one. His co-defendant has been granted clemency by the President and released. While the government invokes the specter of violence in this case, it did not bother to charge Mr. Metz with a violent offense or to prove such facts to a jury. The continued incarceration of Mr. Metz is the pointless infliction of pain and suffering, at considerable taxpayer expense, without any corresponding benefit to public safety. The motion for compassionate release or release to home confinement should be granted.

### I.     Exhaustion

Mr. Metz does not dispute the necessity of exhaustion but also notes that, as with the exhaustion requirement of the PLRA, the rule requiring exhaustion in compassionate release cases is merely mandatory, not jurisdictional. *United States v. Franco*, 973 F.3d 465, 467-68 (5th Cir. 2020). As such, the rules governing exhaustion in PLRA cases should apply here. Under those rules, "the burden is on [the government] to demonstrate that [the inmate] failed to exhaust available administrative remedies." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). "Consequently, [the government] must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor." *Id.* (citing *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th

Cir. 2003)).

Here, Mr. Metz has submitted through counsel, subject to sanction by the Court, the fact that he submitted a request for compassionate release to the warden at his facility. He followed up with that warden in person and was assured the warden would review the matter. The government merely maintains that it cannot find any evidence of this. But the absence of evidence is not evidence of absence. Unless the government comes forward with affirmative proof, such as sworn testimony that there is no way Mr. Metz could have submitted his request for compassionate release but it ended up misplaced or misfiled, there is no basis for concluding the government has affirmatively demonstrated all the required elements for an exhaustion defense. At the minimum, an evidentiary hearing would be necessary at which Mr. Metz's credibility could be judged against the credibility of the warden (assuming he disclaimed any knowledge of the encounter, which is far from certain) and whatever administrative personnel are responsible for processing inmate requests for compassionate release.

Additionally, "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). "As we explained in *Booth*, the ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Id.* (internal quotations omitted). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.*

An administrative exhaustion system is not "available" as, by analogy to the PLRA context, required for these purposes when the "administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use." *Id.* "In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Similarly, exhaustion is not required

when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

As the e-mail exchanges with counsel for the BOP at Mr. Metz's facility indicate, the system is, or can only be expected to be, "clear as mud"—to two lawyers, both well versed in federal law. Ex. F at p. 1.[1] Mr. Metz had his previous, pro se motion for compassionate release denied on exhaustion grounds. His children went to the trouble and expense of hiring an attorney, who specifically advised him of the need to first request compassionate release from the warden. His attorney received detailed information as to the date and manner of his exhaustion. It is simply not plausible that Mr. Metz failed again to do that which stands in the way of consideration of the merits of his request for compassionate release. Because BOP's system provides no means for an inmate to confirm receipt of a submission to the administration, such as a tracking number, printed confirmation page, or the like, and because of the implausibility of Mr. Metz, for no reason whatsoever, affirmatively deciding to pointlessly lie to his attorney, the Court should deem the administrative remedies system at FCI-Beaumont unavailable for purposes of exhaustion as to Mr. Metz.

Either way—based on the government's failure to establish all elements of the affirmative defense of exhaustion "beyond peradventure" or the unavailability of an administrative means to exhaust this claim at FCI-Beaumont—the government's attempt to invoke the exhaustion defense

---

[1] Mr. Metz submitted a request to the Warden per his counsel's instructions in February, and awaited the necessary delays, thereafter following up on his request. Upon receiving the government's memorandum in opposition, undersigned counsel has regularly communicated with BOP counsel to determine the prison's procedure for tracking such requests. Moreover, Mr. Metz submitted yet another request on June 23, 2021, but again, was not given any tracking number or document he can provide to the Court. This convoluted process, coupled with a lack of documentation, is precisely why Congress have endowed the federal courts to accomplish what the BOP cannot.

should be rejected. At a minimum, a hearing would be necessary before acceding to it. At present, an attorney for the government says BOP has no record. And Mr. Metz's attorney says there must be. Particularly as the burden is the government's, a hearing to hear from the persons with first-hand knowledge—Mr. Metz and the staff at FCI-Beaumont—is necessary to resolve this question of fact. At that hearing, information on the complexity of the administrative system, its accessibility, and its reliability in transmitting and creating records of requests should also be admitted, bearing as it does on the second question of "availability."

## II. Merits

The government's chief response to the otherwise-indisputable merits of a sick old man asking for release from the singularly cruel experience of locked down prisons during the COVID crisis is to go on and on about the supposedly violent nature of Mr. Metz's offenses. Except let us again turn to the actual *charges* of which Mr. Metz was convicted. None of them is violent. True, the Fifth Circuit opinion painted in broad brush strokes, far beyond the facts shown at trial, but if the President of the United States was able to see through the Fifth Circuit's injudicious verbiage as to Mr. Metz's co-defendant when he commuted Danielle Metz's sentence, who also received life, Mr. Metz is confident the Court can do the same. Commutation of Danielle Bernard Metz (Aug. 30, 2016), *available at* https://www.justice.gov/pardon/commutations-granted-president-barack-h-obama-2009-2017##30aug2016.[2]

---

[2] The government cites to various newspaper articles in its opposition after also mentioning Ms. Metz's commutation. What's good for the goose is good for the gander, though. Those same articles wrote the same material about Ms. Metz, who has been not just a model citizen since her release for exactly the same conduct, but so much a model as to be celebrated. Casey Parks, *'You don't know what you did for me': Released from prison by Obama, now on the dean's list*, USA TODAY (Dec. 12, 2019), *available at* https://www.usatoday.com/in-depth/news/education/2019/07/08/prison-reform-inmate-felon-clemency-pell-grant-ban-the-box/1624740001/; Kirsten West Savali, Danielle Metz, *Woman Granted Clemency By President Obama, Speaks At 2019*

Mr. Metz was tried on—and therefore had a plenary opportunity to defend against—charges of criminal enterprise (CCE), money laundering, and possession of cocaine with intent to distribute. He was not indicted on the murder counts or even the assault-by-firearm count. R. Doc. 1260-1, pp. 4-8. The crimes of which he was actually convicted are, he points out again, by their terms and elements, offenses capable of commission without violence *and on the facts as alleged in the indictment, Mr. Metz did not in fact engage in violence*. Even Count 1, the only count charging Mr. Metz that mentions violent conduct, does so while charging the others (e.g., Marlo Helmstetter, Gerald Elwood, and Gennero Arthur) who were actually alleged to have engaged in the violence. Neither the indictment, nor the verdict connect Mr. Metz to a personal involvement in violence.

Thus, the government's citation to *United States v. Samak*, No. CR 91-189, 2020 WL 4050365, at *4 (E.D. La. July 20, 2020), which was decided under a now-rejected legal framework in any event, *see United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021), is unavailing. Mr. Samak "took an innocent life and nearly killed three other individuals when he intentionally started a building fire," before then "attempt[ing] to trap his accomplice in the building before setting it on fire." 2020 WL 4050365, at *4. That is a bit more proven at trial than money laundering, drug trafficking, and earning a living from that drug trafficking. The government's citation to *United States v. Sylvester*, No. CR 04-0094, 2021 WL 1226408, at *3 (E.D. La. Apr. 1, 2021), is even more wildly inapposite, involving as it did the murder of a government witness. Indeed, while the government cites to these inapposite cases, it does not bother to cite to cases far more on point—

---

*Essence Festival*, ESSENCE MAGAZINE (July 9, 2019), *available at* https://www.essence.com/awards-events/2019-essence-festival/danielle-metz-clemency-obama-honor-roll/. There is no reason Mr. Metz should not be given the same opportunity to write a new story about his life.

involving the so-called "Seventh Ward Soldiers" case from the 1990s, where multiple murders were alleged. Judge Milazzo recently reduced the life sentences in that case to 17, 20, and 30 years under the First Step Act on worse offense facts with less rehabilitation—and less time served. *United States of America v. Jones et al.*, No. 98-cr-207 (E.D. La. 1998) (R. Docs. 1436, 1457, 1496, 1496). The Guidelines and the entire federal sentencing scheme itself are supposed to reduce sentencing disparities, particularly within-district. The First Step Act should not be perverted into a tool by which they creep back in.

In any event, setting aside these comparable cases that the government did not see fit to bring to the Court's attention, the government's reliance on newspaper reports and facts neither charged nor proven at trial to oppose compassionate release raises substantial constitutional questions. By asserting these "facts," at most accepted for sentencing purposes in the era predating *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to deprive Mr. Metz of his opportunity to demonstrate grounds for compassionate release, the government is effectively increasing the severity, indeed, the statutory maximum, for his sentence based on facts not proven to a jury beyond a reasonable doubt. This is so because, factored into the maximum sentence a person will serve is now the statutory availability of compassionate release.

The government argues that *even if* Mr. Metz demonstrates extraordinary and compelling circumstances, the facts it asserts, but that were never proven to a jury, disqualify him from release under an application of the Section 3553(a) factors. That is, the government does not simply argue that its view that Mr. Metz is a violent offender bears on whether he can show extraordinary and compelling circumstances. It maintains that even if those grounds are present, these un-proven facts trump under Section 3553(a). That violates Mr. Metz's Sixth Amendment right to a sentence subject to modification based on extraordinary and compelling circumstances under 18 U.S.C. §

3582(c)(1)(A), because it relies on facts not proven to a jury to trump any such showing. *Cf. United States v. Haymond*, 139 S. Ct. 2369 (2019) ("A judge's authority to issue a sentence derives from, and is limited by, the jury's factual findings of criminal conduct."). The government can wax eloquent about the supposed wrongs it attributes to what it chooses to call the "Metz Organization." It is telling it did not bother to attempt to prove any of those against Mr. Metz at trial. That failure—or inability, we shall never know—now has constitutional consequences.

Mr. Metz is therefore serving a life without parole sentence for crimes that did not involve loss of life or serious bodily injury. His wife and partner in crime has been out for years, making headlines for her successful rehabilitation. He is so old and wasted away that his body mass index is a medical problem. He has served 30 years, with a near perfect disciplinary record and undertaken extensive self-improvement work despite his putative sentence to life. Whether or not COVID itself continues to pose a substantial medical risk to Mr. Metz, the conditions of confinement under circumstances of a pandemic—extensive lockdowns—are atypical and represent a hardship not contemplated at the time of his sentence. These are extraordinary and compelling circumstances. The cases the government cites purporting to establish that the nature of Mr. Metz's offense compels the conclusion that the Section 3553(a) factors trump these extraordinary and compelling circumstances are inapposite because he is, to the Constitution and so to the Court, a non-violent offender.

In any event, thirty years is long enough to promote respect for the law and to deter, reflect the seriousness of and provide just punishment for any offense other than murder. *Cf. Graham v. Florida,* 560 U.S. 48, 69 (2010) ("Serious nonhomicide crimes may be devastating in their harm ... but in terms of moral depravity and of the injury to the person and to the public, ... they cannot

be compared to murder in their severity and irrevocability.").[3]  There is no longer any need to protect the public from a stick-thin old man whose disciplinary history is nearly perfect after 30 years.  The vocational and rehabilitative training Mr. Metz could have been excused for skipping but he undertook nevertheless satisfy that Section 3553(a) ground.  So the government is not simply wrong in suggesting that the Section 3553(a) grounds trump Mr. Metz's extraordinary and compelling showing; they strongly counsel his release, or at least recommend that he serve the remainder of his sentence at home, being supported by his willing family rather than taxpayers, in his final years.

Respectfully submitted,

*/s/ Sara A. Johnson*
Sara A. Johnson (La. Bar No. 31207)
700 Camp Street
New Orleans, LA 70130
(504) 528-9500
sara@sarajohnsonlaw.com

## CERTIFICATE OF SERVICE

This certifies that I filed the foregoing using the CM/ECF system, which will send a copy to all counsel of record.

Dated: June 28, 2021.

*/s/ Sara A. Johnson*
Sara A. Johnson

---

[3] Even conceding the government's argument that Mr. Metz tended toward violent behavior—which Mr. Metz does not—ample research indicates that individuals age out of violent conduct. ALI Reporter, *Model Penal Code: Sentencing Rep. Study DD No 2* fn. 25 (2009) (explaining phenomenon of "criminal menopause").  At 65, Mr. Metz is long past the point where studies uniformly indicate violent tendencies all but disappear across all offender classes.