# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 92-469** |
| **GLENN METZ** | **SECTION I** |

### <u>ORDER & REASONS</u>

Glenn Metz "was the main organizer, supervisor and manager of a group of individuals known as the 'Metz Organization.'" *United States v. Tolliver*, 61 F.3d 1189, 1196 (5th Cir. 1995) (hereinafter, *Tolliver I*).[1]  Members of the organization "conspired to, and in fact did distribute approximately 1000 kilograms of cocaine in the New Orleans metropolitan area and, in furtherance of the conspiracy, committed murders, [and] attempted murders and other violent crimes." *Id.*[2]

---

[1] The Fifth Circuit's judgment in *Tolliver* was vacated by the Supreme Court for reconsideration following *Bailey v. United States*, 516 U.S. 137 (1996).  *Moore v. United States*, 519 U.S. 802 (1996).  On remand, the Fifth Circuit vacated Metz's firearms conviction pursuant to the concurrent sentence doctrine, though it declined to review the merits of his challenge to it—or the implications of *Bailey* for his conviction.  *United States v. Tolliver*, 116 F.3d 120, 126 (1997) (hereinafter, *Tolliver II*).  Neither *Tolliver* opinion called into question the factual support for any of the charges of which Metz was convicted.  Regardless, the Court does not rely on Metz's firearms conviction in reaching its decision today.

[2] Metz argues that the Fifth Circuit's description of his crimes "painted in broad brush strokes" and represents "injudicious verbiage," rather than a fair description of the facts demonstrated at trial.  R. Doc. No. 1265, at 4.  Metz also argues that, in commuting co-defendant Danielle Metz's sentence, President Barack Obama "was able to see through the Fifth Circuit's" opinion, and that this Court should do the same.  *Id.*

The Court does not possess the President's power to commute sentences.  It can, as described herein, reduce them in certain extraordinary circumstances.  In doing so, it is constrained by statute and caselaw.

1

Now before the Court is Metz's motion[3] for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(a).[4]  Because, as explained below, the Court cannot conclude after considering the relevant factors enumerated in 18 U.S.C. § 3553(a) that a reduction in sentence is merited, it denies the motion.

## I.

On December 15, 1993, Metz was sentenced to life imprisonment by United States District Judge A.J. McNamara after he was convicted by a jury of conspiracy to possess cocaine with intent to distribute, conducting a continuing criminal enterprise ("CCE"), money laundering, possession with intent to distribute cocaine, and carrying and using a firearm in aid of racketeering.  On August 14, 1995, the Fifth Circuit affirmed Metz's conviction on all counts except for the conspiracy charge, which was vacated because it was a lesser included offense of the CCE charge of which Metz was also convicted.  *Tolliver I*, 61 F.3d at 1223.  As explained, the Fifth Circuit later vacated Metz's firearms conviction in light of the Supreme Court's decision in *Bailey*, although the decision had no impact on the life sentence Metz received for his CCE conviction.  *Tolliver II*, 116 F.3d at 126.

---

[3] R. Doc. No. 1258.

[4] Metz requests in the alternative that the Court "move [him] to home confinement under the CARES Act." R. Doc. No. 1258-1, at 9. As the Fifth Circuit has recognized, "the plain language of the CARES Act does not grant a federal court the authority to make home confinement determinations." *United States v. Lang*, 835 F. App'x 790, 791 n.5 (5th Cir. 2021). And even if the Court did possess such authority, it does not believe Metz is a suitable candidate for home confinement for the same reasons that it concludes compassionate release is inappropriate. It will not address the issue further.

Since then, Metz has filed several unsuccessful post-conviction challenges to his conviction and his sentence,[5] as well as a motion for compassionate release that was dismissed for failure to demonstrate administrative exhaustion.[6] Metz is currently incarcerated at FCI Beaumont Medium ("Beaumont"),[7] and he asks the Court to reduce his sentence to a term of time served or release him to home confinement.[8]

Metz argues, *inter alia*, that the fact he is serving a life sentence for what he describes as "non-violent offenses," the fact he has served nearly thirty years of that sentence with a near-spotless disciplinary record, and the fact that he is "old and ill" constitutes extraordinary and compelling circumstances justifying release.[9]

## II.

Generally, "[t]he court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). This rule has some exceptions, which, under the First Step Act, may now be presented to the court upon a defendant's motion.[10] For such a motion to be properly before the court, the defendant must either exhaust all administrative remedies, or thirty days must elapse "from the receipt of [a

---

[5] The Court has previously summarized these proceedings. *See* R. Doc. No. 1204.
[6] R. Doc. No. 1244.
[7] Inmate Locator, BOP, https://www.bop.gov/inmateloc/ (last visited July 9, 2021).
[8] R. Doc. No. 1258.
[9] R. Doc. No. 1258-1, at 1–2.
[10] The First Step Act provided defendants a mechanism to unilaterally move for a sentence reduction; previously, the "Director of the Bureau of Prisons" needed to file the motion. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5193, 5239.

compassionate release request] by the warden of the defendant's facility, whichever is earlier." *Id.*; § 3582(c)(1)(A).

The court "may" grant such a motion if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c). The court must also conclude, however, that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

The most relevant policy statement is found in § 1B1.13 of the U.S. Sentencing Guidelines Manual. The Application Notes to that policy statement, in turn, provide four categories of extraordinary and compelling reasons: "(1) medical conditions, (2) age, (3) family circumstances, and (4) 'other reasons.'" *Thompson*, 984 F.3d at 433 (quoting U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1(A)–(D)) (alterations omitted).

As noted above, the First Step Act provided a new avenue to request compassionate release. Previously, only the Director of the Bureau of Prisons ("BOP")—not defendants on their own—could move for compassionate release. The First Step Act changed that, but the Sentencing Commission's policy statements have lagged behind. Because these policy statements have not been amended since the enactment of the First Step Act, portions of them now contradict 18 U.S.C. § 3582(c)(1)(A).[11]

_____

[11] For example, the policy statement referenced above begins with, "[u]pon a motion by the Director of the Bureau of Prisons"—which implies that the entire statement applies only to such motions (and not those filed by defendants). U.S.S.G. § 1B1.13, Policy Statement; *see also id.* cmt. n.4 ("A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons[.]"); *see also*

However, the Fifth Circuit recently clarified that "neither the policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582." *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021). Nonetheless, the Fifth Circuit has also recognized that the policy statement may still "inform[] [its] analysis." *Thompson*, 984 F.3d at 433.

### III.

The government initially opposed this motion, in part, on the grounds that Metz had still failed to demonstrate that he had adequately exhausted his request.[12] However, during a June 30, 2021 status conference, the government—acknowledging that BOP was struggling to locate the relevant documentation—agreed to waive its reliance on the administrative exhaustion requirement.[13]  Accordingly, the Court will treat Metz's claim as properly exhausted and proceed to its merits.

### IV.

The government has also argued that, despite Metz's admittedly poor condition, his age, and the amount of time he has served, he has not demonstrated that extraordinary and compelling circumstances justify his release.[14]  Because the Court concludes after reviewing the Section 3553(a) factors that it cannot grant release, it need not reach this issue and will instead assume *arguendo* that Metz has demonstrated the presence of extraordinary and compelling circumstances.

---

*United States v. Perdigao*, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.) (noting the discrepancy).

[12] R. Doc. No. 1260, at 7–9.

[13] R. Doc. No. 1266.

[14] R. Doc. No. 1260, at 14–19.

**V.**

As noted, the Court cannot grant compassionate release without reviewing those factors set forth in Section 3553(a) which it finds relevant. That provision states, in relevant part, that:

> The court . . . shall consider--
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; . . .

18 U.S.C. § 3553(a).

Metz argues that the factors, "as well as the absence of any danger he poses to others, further support Mr. Metz's release."[15]  He argues, alluding to his almost unblemished disciplinary record, that "[h]e has been a model inmate" and "has been deterred from criminal conduct and the public will be safe."[16]  He adds that the fact he has served nearly three decades in prison adequately "reflects the seriousness" of the offenses he committed.[17]  Finally, he claims that his "extensive educational history shows that he has obtained the vocational training and correctional treatment indicated."[18]  Metz also argues that, should the Court disagree with him, it should still consider moving him to home confinement.[19]

---

[15] R. Doc. No. 1258-1, at 9.
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*

In relevant part, the government argues that the factors preclude release.[20] Rebutting Metz's description of himself as a non-violent criminal, the government notes that the organization he led committed numerous killings and other acts of violence, and that Metz "personally ordered the killing of rival cocaine distributor Samuel 'Scully' Clay."[21]

The government also notes that, according to contemporaneous news coverage,[22] the Court noted the violent nature of the enterprise Metz ran while sentencing him, stating that the "arrogance of your gang's conduct is best demonstrated by one of your members having the gall to advertise his trade by brazenly driving a bulletproof truck emblazoned with the message 'Homicide—villain in black.'"[23]  The Court also noted that, after some of the shootings at issue, Metz's "violent enforcers would not flee but defiantly [walk away] brandishing assault rifles and other semiautomatic weapons, practically daring someone to confront them."[24]

In response, Metz likens his case to that of his co-defendant, Danielle Metz, who had her sentence commuted by President Obama, pointing the court to news coverage relating to her post-release life and arguing that he should be given a similar opportunity to re-write his story.[25]

---

[20] R. Doc. No. 1260, at 10–14.
[21] *Id.* at 11.
[22] Metz responded to the government's argument, as discussed below, but does not argue that the coverage mischaracterizes the hearings at issue.
[23] *Id.* at 12.
[24] *Id.*
[25] R. Doc. No. 1265, at 4–5.

Next, he reiterates his argument that he should be seen as non-violent because "on the facts as alleged in the indictment, [he] did not in fact engage in violence."[26] Metz argues that the government's use of newspaper articles and the Fifth Circuit's opinion "effectively increa[ses] . . . the statutory maximum[] for his sentence based on facts not proven to a jury beyond a reasonable doubt."[27]

Metz closes where he began, arguing that (1) the conduct for which he was convicted, his prison record, and his frail condition establish that he is no threat to the public; and (2) that he has served enough time.

Thirty years is a long time. Often, it will be enough to convey the seriousness of the crime. And Metz's prison record establishes that he has generally endeavored to better himself and offers no hint that he has acted violently while incarcerated. The Court also notes that Metz's frail condition makes future violent conduct unlikely.

But, as Metz himself notes, *his* physical acts of violence were *never* the problem. The superseding indictment did not allege that Metz killed, injured, and generally brutalized his victims. And yet, his victims were killed, injured, and

---

[26] *Id.* at 5 (emphasis omitted).

[27] *Id.* at 6. A paragraph later, Metz's counsel adds an undeveloped argument that allowing the 18 U.S.C. 3553(a) factors to dictate the denial of a motion where extraordinary and compelling circumstances have been established and the relevant facts have not necessarily been proven to a jury violates the Sixth Amendment. *Id.* at 6–7. These arguments, raised in a reply and with scant briefing, are not sufficiently developed for the Court to address them. They are also difficult to understand. How can the government 'increase' a statutory maximum? And Metz has already been sentenced. He is not arguing that his life sentence was improper.

generally brutalized all the same.  Indeed, the superseding indictment's conspiracy charge[28] alleged that

> . . . at the direction of and with promise of payment from [Metz], in or about June 1987, other conspirators would and did murder Samuel "Scully" Clay, a rival cocaine distributor in the New Orleans area, to enable [Metz] to eliminate competition and increase his cocaine distribution turf.[29]

 The record establishes that this misery and suffering was the violent work-product of members of the Metz Organization, a continuing criminal enterprise led by its namesake, Metz.

Put another way, the absence of record evidence that Metz physically killed people himself can be attributed to the fact he did not *need* to kill anyone himself.  He had subordinates to handle the bloodier bits of his business.  The Court is duty-bound to apply the § 3553(a) factors.  In order to do that, the Court must consider the possibility that Metz will do what he did best prior to incarceration—lead a violent criminal enterprise.  The Court has a responsibility "to protect the public from further crimes of the defendant," not just those crimes in which the defendant pulls the trigger.

Additionally, in light of the wonton violence that took place at Metz's direction, the Court concludes that Metz's sentence promotes respect for the law, reflects the seriousness of his offenses, and provides just punishment for them.  And, while deterrence is not the primary justification for the Court's conclusion today, the Court

---

[28] As noted, the Fifth Circuit vacated the conspiracy charge because it was a lesser included offense of the CCE charge.
[29] R. Doc. No. 229, at 3–4 ¶ 6 (Superseding Indictment).

also hopes that Metz's continued incarceration will highlight for the public the life-altering consequences of participating in organized criminal activity, potentially deterring some from taking part.  On these bases, the Court concludes that the § 3553(a) factors do not support compassionate release.

**VI.**

Accordingly,

**IT IS ORDERED** that Metz's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) is **DENIED**.

New Orleans, Louisiana, July 16, 2021.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**
