# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL DOCKET NO.: 92-469** |
| **VERSUS** | **SECTION: I** |
| **GLENN METZ** | |

### MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

The Court denied Mr. Metz's motion for compassionate release because it could not "conclude after considering the relevant factors enumerated in 18 U.S.C. § 3553(a) that a reduction in sentence is merited." R. Doc. 1270 at 2, 5. The Court's reason for denial under those factors departed from the basis given in the government's opposition, however, entitling Mr. Metz to meet the Court's concern via this motion and additional evidence. Further, the Court's consideration of news articles, rather than confining itself to record evidence, violated the principles announced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Not until the government's opposition introduced newspaper articles did Mr. Metz have notice—far less an opportunity—to contest this unorthodox basis for arguing a man must die in prison. Accordingly, Mr. Metz respectfully requests that the Court reconsider its order denying compassionate release and set this matter for an evidentiary hearing, at which he will present testimony from the correctional employees discussed in Exhibit A, before any denial.

### I. The standard for reconsideration in criminal cases.

"Though motions for reconsideration in criminal actions 'are nowhere explicitly authorized in the Federal Rules of Criminal Procedure, they are a recognized legitimate procedural device.'" *United States v. Castro*, No. CR 15-309, 2020 WL 5209305, at *2 (E.D. La. Sept. 1, 2020) (Africk, J.) (quoting *United States v. Cotto*, No. 16-36, 2020 WL 3832809, at *1 (E.D. La. July 8, 2020)).

"Nevertheless, the Fifth Circuit has held that 'if a motion for reconsideration is filed within twenty-eight days after entry of the judgment from which relief is being sought, the motion is treated as motion to alter or amend under Rule 59(e).'" *Id.*

"A motion for reconsideration under Rule 59(e) 'calls into question the correctness of a judgment.'" *Id.* (quoting *Templet v. HydroChem, Inc.*, 367 F.3d 473, 478 (5th Cir. 2004)). "A Rule 59(e) motion 'is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.'" *Id.* "Instead, a Rule 59(e) motion merely allows 'a party to correct manifest errors of law or fact or to present newly discovered evidence.'" *Id.* "Courts in the Fifth Circuit have both granted and denied motions for reconsideration in the context of 18 U.S.C. § 3582(c)(1)(A)." *Id.* at *3 (citing *United States v. Ansari*, No. 07-337, 2020 WL 4284340, at *2 (E.D. La. July 27, 2020) (Fallon, J.); *United States v. Carney*, No. 14-154, 2020 WL 4747716, at *1, *3 (E.D. La Aug. 17, 2020) (Barbier, J.)).

**II. The Court's reliance on facts not proven to a jury to keep him in prison until he dies violates *Apprendi*.**

In its opposition to Mr. Metz's motion for compassionate release, the government relied on "a series of [Times-Picayune] articles charting the genesis of violent, large-scale narcotics organizations in New Orleans," and asserting that "the Glenn Metz gang," which it alleged was "second in time only to the Clay drug gang," "begat the Richard Pena gang, which begat the gang allegedly run by Derrick 'Eyes' Washington." R. Doc. 1260 at 12-13. The government also relied on a newspaper report of the sentencing proceeding that characterized Metz as "arrogan[t]," not having "spoken one word of remorse," and discussed his "violent enforcers" who "practically dar[ed] someone to confront them." *Id.* at 12.

In its order denying compassionate release, the Court cited to those factual recitations by

2

the government and quoted them as well. R. Doc. 1270 at 7. Alluding to those facts, as well as a factual allegation in the indictment under the conspiracy charge that was vacated on appeal, the Court referred to "misery and suffering [that] was the violent work-product of members of the Metz Organization" as a basis for denying him release. *Id.* at 9.[1] Accordingly, the government offered and the Court incorrectly relied on facts not proven to a jury beyond a reasonable doubt to categorically deny Mr. Metz compassionate release.[2]

### A. The Court's categorical denial of compassionate release based on facts not proven to a jury beyond a reasonable doubt was wrong.

"In *Apprendi*, this Court recognized that it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties." *United States v. Haymond*, 139 S. Ct. 2369, 2377 (2019) (internal quotation marks and alterations omitted). Title 18 U.S.C. § 3582(c)(1)(A), which took effect on November 1, 1987, provides now, as it did at the time of Mr. Metz's offenses, an opportunity for defendants to reduce their sentences. If that statutory right to seek a reduced sentence may be authoritatively and forever foreclosed based on facts not proven to a jury beyond a reasonable doubt, then "the prescribed range of penalties" has

---

[1] The Court's order expressly disclaimed reliance on the firearms count that the Fifth Circuit vacated in *Tolliver II*, 116 F.3d 120, 126 (5th Cir. 1997). R. Doc. 1270 at 1 n.1 (noting *Tolliver II* vacated the firearms count). The error alleged in this motion relates to the Court's reliance on an allegation under the separate conspiracy count, vacated in *Tolliver I*, 61 F.3d 1189, 1223 (5th Cir. 1995). *Id.* at 9 n.28.

[2] The Court faulted Mr. Metz for not asserting that the news coverage "mischaracterize[s] the hearings at issue." R. Doc. 1270 at 22. Because these newspaper accounts are not part of the record, he has no basis for challenging them. Nevertheless, he notes that it is misleading and incorrect to suggest he never expressed any kind of remorse; that his offenses were somehow seminal or generative of the history of violence involved with the drug trade in New Orleans; and that the arrogance of other individuals in the drug trade can or should be attributed to him. Further factual development could reveal additional bases for dispute, but the point of *Apprendi* was to put an end to the resolution of factual disputes by anyone other than the jury when such resolution would affect criminal liability or punishment.

been increased in a manner that violates *Apprendi* and its progeny.[3] That is what happened here. Rather than being sentenced to life without the possibility of parole but with the possibility of compassionate release, Mr. Metz has been sentenced to life without parole and without compassionate release based on facts not proven to a jury.

The Court denied relief because of "the violent nature of the enterprise," one characterized by "arrogan[t]" advertising and shooters who would not "flee" but "defiantly [walk away]." *Id.* at 7 (newspaper accounts). Not only are these accounts not in the record, they are not reliable. "One of the primary reasons newspaper articles are considered unreliable in the first place is that the reporter is conveying information collected from other sources." *Anderson v. Dallas Cty., Texas*, No. 3:05-CV-1248-G, 2007 WL 1148994, at *5 (N.D. Tex. Apr. 18, 2007), *aff'd*, 286 F. App'x 850 (5th Cir. 2008). "[N]ewspaper articles are frequently unreliable because they are neither sworn nor certified, and the authors are not subject to cross-examination." *Dowdell v. Chapman*, 930 F. Supp. 533, 541 (M.D. Ala. 1996); *United States v. Cabalcante*, No. 4:09-CR-194, 2014 WL 12694161, at *8 (E.D. Tex. Feb. 18, 2014), *aff'd sub nom. United States v. Rojas*, 812 F.3d 382

---

[3] The Court's basis for denial, turning on what it accepts as unchangeable historical facts, does authoritatively and forever—or put another way, categorically—foreclose this form of relief. This would be a different case if, for example, the Court had concluded Mr. Metz evidenced a continued need for correctional treatment or had based its decision on any other potentially modifiable, or at least changeable with time, factor under either Section 3553(a) or the "extraordinary and compelling circumstances" test. But the newspaper stories from 1993 will always be the newspaper stories from 1993; the vacated charge in the indictment will always be the vacated charge in the indictment. These documents' facts, never proven to a jury or sustained on appeal, are within the heartland of *Apprendi*'s concern about non-jury-based fact finding, a concern repeatedly extended to any similar situation. *E.g.*, *United States v. Haymond*, 139 S. Ct. 2369 (2019) (extending *Apprendi* to revocations of supervised release); *Alleyne v. United States*, 570 U.S. 99 (2013) (extending jury fact-finding requirement to mandatory minimums); *Southern Union Co. v. United States*, 567 U.S. 343 (2012) (extending *Apprendi* to fines); *United States v. O'Brien*, 560 U.S. 218 (2010) (constitutionalizing "element" versus "sentencing factor" analysis under *Apprendi*).

(5th Cir. 2016).

The Court further refused release because, pointing to a passage from one of the indictment's charges that was vacated on appeal, "[t]he record establishes that this misery and suffering was the violent work-product of members of the Metz Organization, a continuing criminal enterprise led by its namesake, Metz." *Id.* at 9 (vacated conspiracy count). These are fact-specific reasons for categorically denying Mr. Metz the opportunity for compassionate release, and they are facts that were never proven to a jury beyond a reasonable doubt (either of necessity or by special verdict) and sustained on appeal. This violates Mr. Metz's rights under *Apprendi* and its progeny.

### B. Whether or not the Court agrees, it should withdraw its putative procedural basis for rejecting this argument.

The Court refused to consider the above arguments because they were "raised in a reply and with scant briefing" and so "are not sufficiently developed for the Court to address them." *Id.* at 8 n.27. Rejecting Mr. Metz's argument on the basis that it was raised in the reply was manifest error. How was Mr. Metz to know to object to the government's use of newspaper articles before it did so? And how was Mr. Metz to know the Court would rely on a portion of the indictment relating to a charge vacated on appeal, which not even the government cited, before it did so?[4]

Under the principles announced by *Apprendi* and its progeny, courts cannot categorically deny a statutory opportunity to be considered for compassionate release based on "extraordinary

---

[4] The government's record citations to the same event referred to by the Court—the killing of a rival drug dealer—were to the PSR, which obviously would not satisfy the requirements of *Apprendi*. R. Doc. 1260 at 2-3, 11-13. It is for perhaps this reason that the Court turned to the indictment rather than the PSR cited by the government. R. Doc. 1270 at 9. But there is no legal theory under which allegations supporting a charge in an indictment that is subsequently vacated on appeal can satisfy *Apprendi*. The Court implicitly acknowledged this by affirmatively disclaiming any reliance on the vacated firearms count. *Id.* at 1 n.1.

and compelling reasons" using facts not proven to a jury beyond a reasonable doubt. Although Mr. Metz has belabored the point above in the hope of communicating it more clearly, there is nothing more complicated to write. It is a simple argument, and it is only a novel one because the government's overreach in relying on sensationalist media representations of a defendant to argue against compassionate release is novel.

The Court relied on procedural reasons for refusing to consider this *Apprendi*-like argument, but the Court also cast doubt on the merits of Mr. Metz's argument, describing it as "difficult to understand" because "Metz has already been sentenced" so "[h]ow can the government 'increase' a statutory maximum?" *Id.* at 8 n.27. The Court has increased the maximum Mr. Metz faces by ruling that his offense conduct categorically prevents his compassionate release based on compelling and extraordinary circumstances. It has violated *Apprendi* and its progeny in doing this because it has relied on facts about the offense conduct that were not found by a jury.

### III. The Court should reconsider its denial of compassionate release under the theory, not advanced by the government, that Mr. Metz is a continuing danger.

The Court denied compassionate release based in largest part on its view of "the possibility that Metz will do what he did best prior to incarceration—lead a violent criminal enterprise." R. Doc. 1270 at 9. In contrast, the government's opposition had likened Mr. Metz by citation to people *themselves* convicted of violent crimes and had argued that he is "the antithesis of a non-violent inmate," *i.e.*, that Mr. Metz was *himself* violent. R. Doc. 1260 at 10-13. The government made no argument that Mr. Metz represents a continuing danger to society. As such, the principles of party presentation and due process demand that Mr. Metz have an opportunity to meet this different ground, one being used to condemn him to die in prison. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579, 1581 (2020) (party-presentation principle); *Mullane v. Cent.*

*Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950) (requiring for purposes of due process "notice and opportunity for hearing appropriate to the nature of the case").

Considering the available facts, there is no possibility that Mr. Metz will lead a violent criminal enterprise if released. First, Mr. Metz has obtained evidence on this point in the form of a declaration from counsel about what his prison counselors could be expected to testify to if subpoenaed to a hearing. Ex. A at 1-2. That evidence points to a man not simply diminished in his own physical ability to commit violence, but a man who has completely eschewed a criminal mindset. People inclined upon release to run a continuing criminal enterprise do not mentor young inmates, show respect for law enforcement officers, and impress a corrections counselor who knows them well that they are "not a threat to anyone" and that "if there is someone that deserves a second chance, it is Metz." *Id.* at 2.

As part of Mr. Metz's participation in the planning committee for the pre-release team at FCI Pollock, Mr. Metz's name was submitted to and investigated by the Special Investigations Service of the BOP. If Mr. Metz was a threat to anyone inside or outside of the prison, he would not have been allowed to participate on this committee, which allowed him to interact with other inmates' children and families who visited the prison for special events. *Id.* at 3. If Mr. Metz was inclined to "lead a violent criminal enterprise" or direct "subordinates to handle the bloodier bits of his business" from prison, he had ample opportunity to do so. He chose not to.

Similarly, the near perfect conduct Mr. Metz has displayed while in prison, which the Court acknowledged in its order, does not simply cut against the possibility that Mr. Metz will himself be violent but against the possibility he will be involved in violence at all. He has done nothing but demonstrate a sustained, near-flawless ability over the past 30 years to conform his conduct to the lawful expectations of society. This is not the portrait of a man ready to resume a criminal

7

lifestyle.

Neither would there be much opportunity for Mr. Metz to resume a criminal lifestyle upon release, even if he were so inclined. The aged and infirm are not good candidates to assume any major new undertaking, far less one as demanding and stressful as running a violent criminal gang. But even if that were not the case, and even if all evidence did not suggest Mr. Metz has long since aged out of *any* criminal tendencies, not just tendencies towards direct personal violence,[5] with whom would Mr. Metz join to participate in a criminal enterprise? His wife, to whom President Obama granted clemency, and is the very model of successful rehabilitation and reentry? R. Doc. 1263 at 4 & n.2. The other remnants of his "organization" are, so far as records indicate, dead or in prison. His proposed release plan establishes his residence in Houston, not in New Orleans. If Mr. Metz has, as the Court acknowledged, shown better conduct and better rehabilitation than most, that is exactly what devices like compassionate release are designed to reward once joined with the pitiable circumstance of old age and infirmity.

Finally, the Court can address concerns about any threat it worries Mr. Metz may pose if released by imposing exacting conditions of supervised release. Any modification of Mr. Metz's sentence could also impose lifetime supervised release under those conditions. For example, while Mr. Metz does not concede the Court lacks authority to order him to home confinement on other than compassionate release grounds, he notes that there is no dispute that a compassionate release order could require the defendant be kept in home confinement, whether in those words or through a combination of supervised release conditions, for life. *E.g.*, *United States v. Cantu*, 423 F. Supp.

---

[5] Jeffrey T. Ulmer & Darrell Steffensmeier, *The Age and Crime Relationship: Social Variation, Social Explanations* at 377-396, *in* THE NURTURE VERSUS BIOSOCIAL DEBATE IN CRIMINOLOGY (2014).

8

3d 345, 355 (S.D. Tex. 2019) (granting compassionate release to home confinement); *see United States v. Tallon*, 847 F. App'x 630, 633 (11th Cir. 2021) ("On the other hand, the district court might have believed that any of the relief Tallon requested (including a reduced sentence combined with supervised release and a condition of home confinement) is not available under § 3582(c)(1)(A), which would constitute legal error.").

### IV. Conclusion.

The law of compassionate release rightfully examines not only what the defendant did to land himself in prison, but what he has done since. Mr. Metz's case is the rare one where our carceral system of justice has worked. Mr. Metz has been punished. Others have been deterred. Mr. Metz has been rehabilitated. What more is to gain by continued incarceration? Mr. Metz comes to this Court with 30 years of nearly spotless disciplinary history and support from corrections counselors who represent he presents no threat.

At a minimum, the Court should afford Mr. Metz a full and fair opportunity for appellate review of its determination. The Court's order, which relies on erroneous procedural grounds and a theory of danger not advanced by the government, does not provide that opportunity. Accordingly, Mr. Metz respectfully requests that the Court reconsider its order denying his motion for compassionate release and set the matter for an evidentiary hearing, where he can submit testimony from the correctional employees discussed in Exhibit A, before any denial might issue again.

Respectfully submitted,

*/s/ Sara A. Johnson*
Sara A. Johnson (La. Bar No. 31207)
700 Camp Street
New Orleans, LA 70130
(504) 528-9500
sara@sarajohnsonlaw.com

## CERTIFICATE OF SERVICE

This certifies that I filed the foregoing using the CM/ECF system, which will send a copy to all counsel of record.

Dated: August 2, 2021.

*/s/ Sara A. Johnson*
Sara A. Johnson