# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 92-469** |
| **GLENN METZ** | **SECTION I** |

### ORDER & REASONS

Before the Court is defendant Glenn Metz's ("Metz") motion[1] for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The government opposes[2] the motion. For the following reasons, the Court will deny Metz's motion.

## I. BACKGROUND

Metz was convicted of conspiracy to possess with intent to distribute cocaine, conducting a continuing criminal enterprise ("CCE"), money laundering, possession with intent to distribute cocaine, and carrying and using a firearm in aid of racketeering. He was sentenced to life imprisonment on December 15, 1993.

The Fifth Circuit affirmed Metz's conviction on August 14, 1995 on all counts except for the conspiracy charge, which was vacated because it was a lesser included offense of the CCE charge of which Metz was also convicted. *United States v. Tolliver*, 61 F.3d 1189, 1223 (5th Cir. 1995) ("*Tolliver I*"). In *United States v. Tolliver*, 116 F.3d 120 (5th Cir. 1997) ("*Tolliver II*"), the Fifth Circuit vacated Metz's firearms conviction after the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137 (1996).

---

[1] R. Doc. No. 1314. Metz also filed a motion to expedite consideration of his motion for compassionate release, R. Doc. No. 1317, which the Court denied, R. Doc. No. 1324.
[2] R. Doc. No. 1318.

1

The Fifth Circuit's decision in *Tolliver II* had no impact on the Metz's life sentence for his CCE conviction.

In the years since his conviction, Metz has filed a number of unsuccessful challenges to his conviction and his sentence,[3] as well as several motions for compassionate release.[4] Metz is currently incarcerated at FCI Butner Medium II ("Butner").[5] In the motion for compassionate release before the Court, Metz asks the Court to reduce his sentence to a term of time served or release him to home confinement.[6]

Metz argues that extraordinary and compelling circumstances exist which warrant a reduction in his sentence, including his medical conditions and advanced age which render him unable to care for himself, the fact that he has received "grossly inadequate" medical care from the Bureau of Prisons ("BOP"), and the fact that he is at continued risk of contracting Covid-19.[7] He also argues that, applying the 18 U.S.C. § 3553(a) sentencing factors, his 30 years' of incarceration are a sufficient sentence, especially in light of his rehabilitation, lack of a disciplinary history in prison, and his positive role in the lives of his friends and family.[8]

---

[3] The Court has previously summarized these proceedings. *See* R. Doc. No. 1204.
[4] R. Doc. Nos. 1244, 1258.
[5] *Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited June 8, 2023).
[6] R. Doc. No. 1314, at 1.
[7] R. Doc. No. 1314-1, at 8.
[8] *Id.* at 18–25.

The government opposes Metz's motion on three grounds. First, the government asserts that Metz has failed to exhaust his administrative remedies.[9] Second, the government asserts that Metz's medical conditions do not constitute extraordinary and compelling circumstances, and that a civil action, not a motion for compassionate release, is the appropriate vehicle to address Metz's arguments concerning the quality of medical care he is receiving from the BOP.[10] Third, the government alleges that Metz has not demonstrated that the Court erred in its analysis of the 18 U.S.C. § 3553(a) factors.[11]

## II. STANDARD OF LAW

The Court "may" grant defendant's motion for compassionate release pursuant to the First Step Act if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).[12] According to the statute, the Court must also conclude that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* (ii). However, the Fifth Circuit—along with the Second, Fourth, Sixth, Seventh, and Tenth Circuits[13]—has

---

[9] R. Doc. No. 1318, 5–9.
[10] *Id.* at 9–13.
[11] *Id.* at 13–14.
[12] "[T]he district court may deny [the defendant's] motion without reaching the Section 3553(a) factors if it determines that he has not identified 'extraordinary and compelling reasons' justifying his release." *United States v. Jackson*, 27 F.4th 1088, 1093 n.8 (5th Cir. 2022) (quoting 18 U.S.C. § 3582(c)(1)(A)(i) and *United States v. Thompson*, 984 F.3d 431, 433–35 (5th Cir. 2021)).
[13] *See United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 274 (4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098 (6th Cir.

3

held that "neither the [Sentencing Commission's] policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582." *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021). Accordingly, the Court is "bound only by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a)." *Id.* Nonetheless, the Fifth Circuit has also recognized that the policy statement may still "inform[ ] [its] analysis." *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021).

The most relevant policy statement is found in § 1B1.13 of the U.S. Sentencing Guidelines Manual ("U.S.S.G."). The Application Notes to that policy statement, in turn, provide four categories of extraordinary and compelling reasons: "(1) medical conditions, (2) age, (3) family circumstances, and (4) 'other reasons.'" *Thompson*, 984 F.3d at 433 (quoting U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1(A)–(D)) (alterations omitted). Before passage of the First Step Act, only the Director of the BOP—not defendants themselves—could move for compassionate release. The First Step Act changed that, but the Sentencing Commission's policy statements have lagged behind. Because these policy statements have not been amended since the enactment of the First Step Act, portions of the statements now contradict 18 U.S.C. § 3582(c)(1)(A).[14]

---

2020); *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020); *United States v. McGee*, 992 F.3d 1035 (10th Cir. 2021).

[14] For example, the policy statement referenced above begins with "[u]pon a motion by the Director of the Bureau of Prisons"—which implies that the entire statement applies only to motions made by the Director of the BOP (and not those filed by defendants). U.S.S.G. § 1B1.13, Policy Statement; *see also id.* cmt. n.4 ("A reduction under this policy statement may be granted only upon motion by the Director of the

4

### III. ANALYSIS

#### A. Exhaustion of Administrative Remedies

The government first opposes Metz's motion on the ground that he has failed to exhaust his administrative remedies.[15] A court may consider a defendant's motion for modification of a term of imprisonment only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). Failure to satisfy this prerequisite is not jurisdictional, but is rather a mandatory claim-processing rule that must be enforced if invoked by the government. *United States v. Franco*, 973 F.3d 465, 468–69 (5th Cir. 2020). The defendant bears the burden of demonstrating that he has exhausted administrative remedies. *United States v. Singleton*, No. 14-168, 2022 WL 3576767, at *1 (E.D. La. Aug. 19, 2022) (Africk, J.).

The government states that Metz exhausted his administrative remedies with respect to two requests, filed on November 2, 2022 and November 4, 2022, urging the Warden to seek compassionate release on Metz's behalf, both of which referred to his medical concerns generally.[16] However, the government asserts that Metz failed to exhaust his administrative remedies as to the specific allegations raised in a January

---

Bureau of Prisons[.]"); *see also United States v. Perdigao*, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.) (noting the discrepancy).
[15] R. Doc. No. 1318, at 5–9.
[16] R. Doc. No. 1318, at 6.

2023 report[17] from Dr. Anjali Niyogi ("Dr. Niyogi") of Tulane University School of Medicine that Metz was "mistakenly [] prescribed antiplatelet medication, that the antiplatelet medication may have contributed to Metz's subdural hematoma, or that Metz was otherwise receiving inadequate medical care."[18]

Metz's November 2, 2022 request states: "I am requesting Compassionate Release because my health is in a state of constant decline such that it's becoming impossible for me [to] maintain my health in this environment . . . . A review of my medical records will show that I have been [to] several hospitals in the last few months and the diagnosis isn't good."[19] Metz's November 4, 2022 request states:

> I'm elderly and have a medical condition. I'm currently 66 years old and I suffer from the following chronic and/or serious medical conditions: (1) Heart Disease, High Blood Pressure and Prostate Cancer[.] Moreover, I'm experiencing deteriorating mental and physical health that substantially diminishes my ability to Function in a Correctional Facility. My mental issues are as [f]ollows: (1) I had Brain Surgery[.][20]

The Warden of Metz's facility replied on November 14, 2022, stating that Metz does "not meet the criteria for Compassionate Release[,]" noting that he does "not have a terminal medical condition" or a "permanent debilitated medical condition."[21] He also states that "the BOP can provide conventional treatment which can substantially improve your mental and physical condition."[22]

---

[17] R. Doc. No. 1314-6.
[18] R. Doc. No. 1318, at 7.
[19] R. Doc. No. 1314-8, at 2.
[20] *Id.* at 3.
[21] *Id.*
[22] *Id.*

6

The government argues in its opposition to Metz's motion that Metz has not exhausted his administrative remedies with the BOP and instead "obtained a medical report from a doctor at the Tulane University School of Medicine and then [came] straight to this Court, rather than alerting BOP personnel to the findings in the report and giving BOP a chance to respond."[23] However, the Court is unpersuaded that merely attaching Dr. Niyogi's report to Metz's motion to this Court is an attempt to "jump the line." The government does not cite, nor has the Court found, any authority which would require the inmate to provide the Warden with more detail than is necessary to provide notice of the grounds supporting compassionate release.

Metz's two requests to the Warden provide notice that Metz sought compassionate release based upon (1) his advanced age and the fact that he is "experiencing a serious deterioration in physical or mental health because of the aging process"[24] and (2) the fact that he is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he [] is not expected to recover."[25] Metz also lists his medical conditions and concerns, which he offers as extraordinary and compelling circumstances in the instant

---

[23] R. Doc. No. 1318, at 2.
[24] U.S.S.G. 1B1.13, Application Note (1)(B).
[25] *Id.* Application Note (1)(A).

motion.[26] Metz' motion for compassionate release is therefore based upon the same general grounds alleged in his prior requests to the Warden.[27]

Further, as Metz notes in his reply to the government's opposition, Dr. Niyogi's report was based upon the BOP's own medical records.[28] If the purpose of the exhaustion requirement is, as the government argues, partially to prevent the BOP from being "boxed out" and having "the Court make a medical conclusion without input from Metz's primary medical caregivers[,]"[29] that concern is not implicated where the medical records provided to the court and to Dr. Niyogi were the records of Metz's primary medical caregivers—the BOP. Accordingly, the Court finds that Metz has exhausted his administrative remedies and will consider the merits of his motion for compassionate release.

### B. Extraordinary and Compelling Circumstances

Metz asserts that his medical conditions, his advanced age, the poor quality of medical care he has been provided by the BOP, and the continued risk that he will contract Covid-19 constitute extraordinary and compelling circumstances justifying

---

[26] R. Doc. No. 1314-8, at 3. *Cf. United States v. Gonzalez*, No. 20-10879, 2021 WL 2253261, at *1 (5th Cir. June 2, 2021) (finding inmate's allegations that "he suffered from an unspecified 'terminal medical condition'" and did "not discuss the conditions referenced in his subsequent § 3582(c)(1)(A) motion" to be insufficient to exhaust his administrative remedies).

[27] For example, while the government is correct in noting that Metz's requests to the Warden did not state "that Metz had mistakenly been prescribed antiplatelet medication, [and] that the antiplatelet medication may have contributed to Metz's subdural hematoma," R. Doc. No. 1318, at 7, his request to the Warden did provide the fact that he had to have brain surgery as one of the reasons why compassionate release was appropriate. R. Doc. No. 1314-8, at 3.

[28] R. Doc. No. 1326, at 5.

[29] R. Doc. No. 1318, at 7.

his release. In its opposition, the government argues that Metz's has not demonstrated the existence of extraordinary and compelling circumstances warranting compassionate release.[30] The government further argues that Metz's complaints regarding the quality of his medical care are more appropriately addressed in a civil action.[31]

After considering the 18 U.S.C. § 3553(a) factors, discussed in greater detail *infra*, the Court concludes that release is not appropriate. *See United States v. Samak*, No. 91-189, 2020 WL 4050365, at *4 (E.D. La. July 20, 2020) (Morgan, J.) ("Even if Samak had demonstrated 'extraordinary and compelling' circumstances warranted a reduction in his sentence, he would nevertheless not be entitled to relief under § 3582 because the § 3553(a) factors weigh heavily against his release"), *aff'd*, 832 F. App'x 330 (5th Cir. 2020). Accordingly, the Court will assume *arguendo* that Metz has demonstrated the presence of extraordinary and compelling circumstances, and the Court will not address whether a motion for compassionate release or a civil action is the appropriate vehicle for Metz to raise concerns that he is receiving inadequate medical care.[32]

---

[30] *Id.* at 10.
[31] *Id.* at 11 (arguing that "civil actions 'are a more suitable remedy to problems with prison medical care, rather than compassionate release motions.'") (quoting *United States v. Gonzales*, 547 F. Supp. 3d 1083, 1118 (D. N.M. 2021)).
[32] Metz's reply memorandum in support of his motion for compassionate release asserts that "[t]he BOP has no interest in doing what is best for Mr. Metz[.]" R. Doc. No. 1326, at 8. While the Court understands counsel's desire to advocate on behalf of Metz's interests, the Court cautions against ascribing to the BOP motives which counsel is unable to substantiate and which the Court rejects.

9

### C.     18 U.S.C. § 3553 Sentencing Factors

As noted, the Court is "bound only by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a)." *Shkambi*, 993 F.3d at 393. Thus, pursuant to § 3582, the Court may grant a reduction in sentence based on the existence of extraordinary and compelling circumstances only "after considering the factors set forth in section 3553(a) to the extent that they are applicable[.]" 18 U.S.C. § 3582(c)(1)(A).

The most applicable § 3553(a) factors are (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the need for the sentence imposed "to reflect the seriousness of the offense, [or] to promote respect for the law," (3) the need "to afford adequate deterrence to criminal conduct," and (4) the need to "protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A)–(C). After considering all the applicable § 3553(a) sentencing factors, the Court finds that a reduction in sentence is not warranted.

Metz argues that 30 years' incarceration is sufficient to fulfill the purpose of his sentence.[33] He first states that he takes full responsibility for his crimes and for the harm that he caused, including "perpetuat[ing] the cycle of violence that affected him as a child."[34] Metz emphasizes his "extraordinary rehabilitation [as] a critical factor in determining that he should be granted compassionate release[,]"[35] including his role as a mentor to young offenders in prison and his "nearly flawless prison

---

[33] R. Doc. No. 1314, at 17.
[34] *Id.* at 18.
[35] *Id.* at 23; R. Doc. No. 1326, at 12.

disciplinary record."[36] Metz has maintained strong relationships with his family and friends, who "emphasize his deep remorse, his fierce loyalty to his family, and his profound love of Jesus Christ."[37] Metz cites letters of support not only from family and friends, but also from BOP staff[38] and Metz' fellow inmates.[39] Metz urges this Court to view him as a changed man, who has used his 30 years of incarceration to atone for his crimes and to better himself.[40]

The government's opposition urges this Court to consider the severity of Metz' crimes and the need for his sentence to be commensurate with those crimes, as well as to deter future criminal conduct.[41] The government highlights language from this Court's prior orders and reasons denying motions by Metz for compassionate release.[42]

As the Court has previously noted:

> Thirty years is a long time. Often, it will be enough to convey the seriousness of the crime. And Metz's prison record establishes that he has generally endeavored to better himself and offers no hint that he has acted violently while incarcerated. The Court also notes that Metz's frail condition makes future violent conduct unlikely.

---

[36] R. Doc. No. 1314, at 23.
[37] *Id.* at 25.
[38] *Id.* at 18 (noting LaTannier Burnett, an Education Specialist with the BOP, believes Metz's regret for his crimes is genuine); R. Doc. No. 1314-4, at 2 (letter from BOP staff member, stating that "it would be in the best interest for [Metz] to receive care from family or a facility"); and R. Doc. No. 1314-5, at 3 (declaration of Metz' counsel, stating that a correction staff member believes "Mr. Metz has 'earned' compassionate release").
[39] R. Doc. No. 1314, at 21.
[40] R. Doc. No. 1326, at 12.
[41] R. Doc. No. 1318, at 13.
[42] *Id.* at 13–14.

But, as Metz himself notes, *his* physical acts of violence were *never* the problem. The superseding indictment did not allege that Metz killed, injured, and generally brutalized his victims. And yet, his victims were killed, injured, and generally brutalized all the same. Indeed, the superseding indictment's conspiracy charge[43] alleged that

> . . . at the direction of and with promise of payment from [Metz], in or about June 1987, other conspirators would and did murder Samuel "Scully" Clay, a rival cocaine distributor in the New Orleans area, to enable [Metz] to eliminate competition and increase his cocaine distribution turf.[44]

The record establishes that this misery and suffering was the violent work-product of members of the Metz Organization, a continuing criminal enterprise led by its namesake, Metz.

Put another way, the absence of record evidence that Metz physically killed people himself can be attributed to the fact he did not *need* to kill anyone himself. He had subordinates to handle the bloodier bits of his business. The Court is duty-bound to apply the § 3553(a) factors. In order to do that, the Court must consider the possibility that Metz will do what he did best prior to incarceration—lead a violent criminal enterprise. The Court has a responsibility "to protect the public from further crimes of the defendant," not just those crimes in which the defendant pulls the trigger.

Additionally, in light of the wonton violence that took place at Metz's direction, the Court concludes that Metz's sentence promotes respect for the law, reflects the seriousness of his offenses, and provides just punishment for them. And, while deterrence is not the primary justification for the Court's conclusion today, the Court also hopes that Metz's continued incarceration will highlight for the public the life-altering consequences of participating in organized criminal activity, potentially deterring some from taking part. On these bases, the Court concludes that the § 3553(a) factors do not support compassionate release.[45]

---

[43] As noted, the Fifth Circuit vacated the conspiracy charge because it was a lesser included offense of the CCE charge.
[44] R. Doc. No. 229, at 3–4 ¶ 6 (Superseding Indictment).
[45] R. Doc. No. 1270, at 8–10.

Considering the arguments raised by Metz in the instant motion for compassionate release and applying the relevant § 3553(a) factors, the Court concludes today, as it did before, that the § 3553(a) factors do not support compassionate release.

## VI. CONCLUSION

Accordingly,

**IT IS ORDERED** that Metz's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) is **DENIED**.

New Orleans, Louisiana, June 8, 2023.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**